JOHN AMER

*v.*

THE UNION BUILDING AND LOAN ASSOCIATION.

Where the complainant by his bill shows that the defendant, a building and loan association, by its constitution and by-laws, promised that when each shareholder had made payments upon his shares of stock, making such shares of the value of $200 each, it would declare the institution closed and deliver

to those who had taken loans their securities to be canceled, and pay to those who had simply invested their money the full value of their shares, and that he had made such payments and the company had declared the institution closed, and that the company has in its possession assets, and refuses to pay him after the lapse of ten years, and prays a discovery, an accounting and an injunction and the appointment of a receiver, a case is presented within the jurisdiction of a court of equity.

On demurrer.

Mr. *John S. Voorhees*, for the demurrant.

Mr. *Silas D. Grimstead*, for the complainant.

BIRD, V. C.

The insistment is that the facts presented by this bill are not sufficient to give this court jurisdiction.

The following statement will enable us to determine this question. The organization of the defendant company is set forth. It is shown that the constitution provides

" that any member, being a shareholder, shall pay the sum of one dollar on the second Tuesday of October, 1869, and one dollar on the second Tuesday in each and every month thereafter to the secretary or such other officer or person as shall, from time to time, by the laws or regulations of this association, be authorized to receive the same until the value of the whole stock be sufficient to divide to each share of stock the sum of $200. When each shareholder shall receive a loan of $200 for their several share or shares of stock or when the whole of the said fund of the association (including the securities for loans aforesaid), shall be sufficient to divide to each share of stock the sum of $200, then the association shall determine and close. At this period those who have borrowed from the association and are yet members, shall have their obligations canceled and returned to them. Those who have not borrowed shall be paid the amount of their shares in cash."

In September, 1881, the shares of stock became and were of the value of $200 each. The association declared that it was then determined and closed. It further appears that those who had taken loans should, upon application, have their securities delivered up to be canceled, and that those who had taken shares of stock should be paid the amount due to them in cash, the former, it will be perceived, having had their money, or its

equivalent, while the latter only had their shares of stock, the money to which they were entitled being still in the possession of the company. The complainant became the owner of ten shares of stock, and he made such payments thereon as that he became entitled to the payment to him of the sum of $200 upon each of his said shares when such association was determined and closed as aforesaid. Those who had taken loans and given security for it had their securities returned to them. The bill alleges that the complainant is entitled to $200 on each of the said shares of stock, with interest thereon, from the 1st day of September, 1881. The defendant company is the owner of real estate and other assets, which in equity is liable for the payment of the amount due to the complainant and to other shareholders, and it refuses to account to the shareholders for the value thereof or the rents and profits. There is an allegation that the association is insolvent.

There is a prayer for discovery of assets, for an accounting and for a direction to pay the complainant the amount due, and for an injunction restraining the defendant, in case it shall be found to be insolvent, from collecting any of its assets or making any disposition thereof, and for the appointment of a receiver.

I think this is a good bill. It clearly shows a contract between the complainant and the defendant company, in and by which the company promises the complainant that if he and others would make certain payments extending through a period of time to be fixed by the defendant itself, that then it would pay the complainant and others certain sums of money. The complainant made such payments, and the defendant company, on its own motion, fixed and determined when those payments should cease; in other words, when the object of the creation of the institution had been accomplished. While the complainant has fully performed upon his part, the defendant as fully left its part of the contract unperformed, notwithstanding the complainant had waited full ten years, receiving neither principal nor interest. The association has assets with which to pay the complainant and others in part, if not in full. The object had in view is the performance of this contract upon the part of the association.

Nothing can be clearer than the obligation upon the part of the company here set forth. And it is equally clear that a court of equity has jurisdiction of such case. Indeed, it would be extremely difficult for the complainant to obtain relief in a court of law. It is the duty of this court to enforce this contract.

It would be monstrous injustice to deny this complainant relief. The managers of this institution have so conducted its affairs that those who took loans promptly received all the benefits designed by the formation of the association, while those who simply invested their cash have been obliged to wait ten years, with the prospect of receiving at last less than the principal originally invested. The assets remaining are equitable assets. They must be distributed ratably amongst the shareholders, for which purpose they are held in trust by the officers of the association. There is no way known to our system of jurisprudence of making such distribution except through the instrumentality of a court of equity.

The demurrer should be overruled, with costs.